FILED

1  BRIGGS LAW CORPORATION [FILE: 1190.05]
   Cory J. Briggs (State Bar no. 176284)
2  Mekaela M. Gladden (State Bar no. 253673)
   99 East "C" Street, Suite 111
3  Upland, CA 91786
   Telephone: 909-949-7115
4  Facsimile: 909-949-7121

2011 JAN 13 PM 1:06

CLERK U.S. ...
...

5  Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites
      Protection Circle Advisory Committee, CAlifornians for
6     Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith,
      Patricia Figueroa, Ronald Van Fleet, and Catherine Ohrin-Greipp

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10  _____   CV 11 - 00400 DMG  (DTBx)

11  LA CUNA DE AZTLAN SACRED SITES )   CASE NO. _____
    PROTECTION CIRCLE ADVISORY )
    COMMITTEE; CALIFORNIANS FOR )      COMPLAINT FOR DECLARATORY,
12  RENEWABLE ENERGY; ALFREDO )         INJUNCTIVE, AND MANDAMUS
    ACOSTA FIGUEROA; PHILLIP SMITH; )   RELIEF  UNDER  THE
13  PATRICIA FIGUEROA; RONALD VAN )     ADMINISTRATIVE  PROCEDURES
    FLEET; and CATHERINE OHRIN-GREIPP, ) ACT, THE NATIONAL HISTORIC
14                                    )  PRESERVATION  ACT,  THE
                Plaintiffs,           )  NATIONAL  ENVIRONMENTAL
15                                    )  POLICY ACT, THE FEDERAL LAND
          vs.                         )  POLICY AND MANAGEMENT ACT,
16                                    )  AND  THE  NATIVE  AMERICAN
    UNITED STATES DEPARTMENT OF THE )   GRAVES  PROTECTION  AND
17  INTERIOR; KEN SALAZAR, in the official ) REPATRIATION ACT
    capacity of Secretary of the United States )
18  Department of the Interior; UNITED STATES )
    BUREAU  OF  LAND  MANAGEMENT; )
19  ROBERT ABBEY, in the official capacity of )
    Director of the United States Bureau of Land )
20  Management; TERI RAML, in the official )
    capacity of District Manager of the California )
21  Desert District of the United States Bureau of )
    Land Management; RUSTY LEE, in the official )
22  capacity of Field Manager of the Needles Field )
    Office of the United States Bureau of Land )
23  Management; SOLAR PARTNERS I, LLC; )
    SOLAR  PARTNERS  II,  LLC;  SOLAR )
24  PARTNERS VIII, LLC; and BRIGHTSOURCE )
    ENERGY, INC.                      )
25                                    )
                Defendants.           )
26  _____ )

27      Plaintiffs LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE

28  ADVISORY COMMITTEE, CALIFORNIANS FOR RENEWABLE ENERGY, ALFREDO

ACOSTA FIGUEROA, PHILLIP SMITH, PATRICIA FIGUEROA, RONALD VAN FLEET, and CATHERINE OHRIN-GREIPP allege as follows:

**Parties**

1.      Plaintiff La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee ("LA CUNA") is a non-profit, 501(c)(3) organization and a party to that certain *Amendment No. 1 to Memorandum of Understanding Between United States Department of the Interior Bureau of Land Management and the Southern Low Desert Resource Conservation and Development Council*. LA CUNA is comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites that are located along the Colorado River from Needles, California, to Yuma, Arizona. (A true and correct copy of *Amendment No. 1* is attached to this pleading as Exhibit "A.")

2.      Plaintiff CAlifornians for Renewable Energy is a non-profit organization formed to promote public education concerning the responsible development of renewable energy and in the preservation of and respect for Native American culture.

3.      Plaintiffs Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van Fleet. and Catherine Ohrin-Greipp are individuals who reside in the areas affecting by the actions challenged in this lawsuit and have an interest in the responsible development of renewable energy and in the preservation of and respect for Native American culture.

4.      The United States Department of the Interior and the United States Bureau of Land Management are agencies or instrumentalities of the United States.

5.      The following Defendants are being sued in their official capacities: Ken Salazar, in the official capacity of Secretary of the United States Department of the Interior; Robert Abbey, in the official capacity of Director of the United States Bureau of Land Management; Teri Raml, in the official capacity of District Manager of the California Desert District of the United States Bureau of Land Management; and Rusty Lee, in the official capacity of Field Manager of the Needles Field Office of the United States Bureau of Land Management.

1      6.     Defendants Solar Partners I, LLC, Solar Partners II, LLC, and Solar Partners VIII,

2  LLC, and BrightSource Energy, Inc., were the applicants for the actions challenged in this

3  proceeding or have a similar interest in the challenged actions.

4                        **Background Information**

5      7.     Generally speaking, this lawsuit challenges Defendants' actions in connection

6  with a major solar-electricity generation project taking place on federal (public) land: namely,

7  *Ivanpah Solar Electric Generating System Project and Associated Amendment to the California*

8  *Desert Conservation Area Plan* ("Ivanpah Project" or "Project"), approximately 3,472 acres in

9  size. The record of decision adopted by and the approvals given by Defendants for the Project

10  are as follows:

11        A.    Defendants have (among other things) approved an amendment to the

12  California Desert Conservation Area Plan ("CDCA Plan") to include the Project as an approved

13  power generation location under the Energy Production and Utility Corridors Element of the

14  CDCA Plan; and granted four right-of-way authorizations.[1]

15      8.     Plaintiffs challenge the Project on a variety of grounds. By way of example and

16  not limitation:

17        A.    Defendants failed to properly engage in the consultations required for the

18  Project under the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq.*

19        B.    Defendants failed to conduct an adequate analysis of the cumulative

20  impacts, failed to prepare a programmatic environmental impact statement, failed to adequately

21  identify and evaluate the significance of the affected cultural environment, and failed to conduct

22  an adequate analysis of alternatives to the Project under the National Environmental Policy Act

23  ("NEPA"), 42 U.S.C. § 4321 *et seq.*

24        C.    Defendants failed to prepare a programmatic environmental impact

25  statement for the broad major federal action contemplated by the Project and other major solar-

26

27

28

---

[1] The right-of-way authorizations are for the Construction Logistics site (CACA-49502) to Solar Partners I, II, and VIII, LLC; for the Ivanpah 1 site (CACA-49504) to Solar Partners II, LLC; for Ivanpah 2 site (CACA-48668) to Solar Partners I, LLC; and for Ivanpah 3 site (CACA-49503) to Solar Partners VIII, LLC,

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.        Page 3

1  electricity generation facilities in violation of NEPA. In a presentation delivered at Defendants'
2  National Land Use Planning Conference in 2009, Defendants announced publicly that they were
3  in the process of preparing a programmatic statement covering the Project (and other solar-
4  electricity generation projects). It turns out, however, that Defendants failed to complete the
5  programmatic statement before approving the Project. (A true and correct copy of the
6  presentation is attached to this pleading as Exhibit "B.")

7          D.     Defendants violated the Federal Land Policy and Management Act of 1976
8  ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, by authorizing solar-electricity generation activities on
9  lands designated in the CDCA Plan as Class L (Limited Use) lands even though such activities
10 are permitted under the CDCA Plan only on Class M (Moderate Use) or Class I (Intensive Use)
11 lands, and by allowing the permanent impairment of the lands affected by the Project and
12 allowing unnecessary or undue degradation on these lands.

13         E.     Defendants' approval of the Project will result in the intentional
14 excavation, disposal, or other removal of Native American cultural items (including human
15 remains) known to be or strongly suspected of being on the Project's site, in violation of the
16 Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 *et*
17 *seq.*

18                **Jurisdiction, Venue, and Exhaustion of Remedies**

19     9.     This Court has jurisdiction over this proceeding pursuant to Sections 1331 and
20 1361 of Title 28 of the U.S. Code because this pleading alleges violations of federal law and
21 seeks to compel Defendants to perform duties owed to Plaintiff, its members, and other
22 members of the public. The Court also has jurisdiction over this proceeding pursuant to Section
23 551 *et seq.* of Title 5 of the U.S. Code, commonly known as the Administrative Procedure Act
24 ("APA"), because the pleading seeks judicial review of actions taken by one or more agencies
25 or officers of the United States.

26     10.    Venue is proper in this Court under Section 1391(e) of Title 28 of the U.S. Code,
27 because (*i*) Defendants are either officers, employees, or agencies of the United States and/or
28 (*ii*) both a substantial part of the events or omissions giving rise to this proceeding were

1 committed in this judicial district and a substantial part of the property at issue in this
2 proceeding is located in this judicial district.

3     11. Plaintiffs have satisfied each and every exhaustion-of-remedies requirement that
4 must be satisfied in order to maintain this proceeding. Alternatively, no exhaustion-of-remedies
5 requirement may be applied to Plaintiffs.

6     12. Plaintiffs have no plain, speedy, adequate remedy in the ordinary course of law
7 since Plaintiffs, their respective members, and other members of the public will suffer
8 irreparable harm as a result of Defendants' violations of federal law as alleged in this pleading.
9 Defendants' violations rest on the failure to satisfy a clear, present, ministerial duty to act in
10 accordance with federal law.

11     13. Plaintiffs have a beneficial right and interest in Defendants' fulfillment of all their
12 legal duties, as alleged in this pleading.

13                              **FIRST CLAIM:**
**Violation of National Historic Preservation Act--Ivanpah Project**
14                                **(Against All Defendants)**

15     14. Paragraphs 1 through 13 are fully incorporated into this paragraph.

16     15. NHPA Section 101(d)(6)(B) provides as follows: "(A) Properties of traditional
17 religious and cultural importance to an Indian tribe or Native Hawaiian organization may be
18 determined to be eligible for inclusion on the National Register. (B) In carrying out its
19 responsibilities under section 106 of this Act, a Federal agency shall consult with any Indian
20 tribe or Native Hawaiian organization that attaches religious and cultural significance to
21 properties described in subparagraph (A)." NHPA Section 106 provides as follows: "The head
22 of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally
23 assisted undertaking in any State and the head of any Federal department or independent agency
24 having authority to license any undertaking shall, prior to the approval of the expenditure of any
25 Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take
26 into account the effect of the undertaking on any district, site, building, structure, or object that
27 is included in or eligible for inclusion in the National Register. The head of any such Federal

28

1  agency shall afford the Advisory Council on Historic Preservation established under Title II of
2  this Act a reasonable opportunity to comment with regard to such undertaking."

3      16.    Plaintiffs, both separately and collectively, attach religious and cultural
4  significance to the federal (public) land that will be affected by the Project. This land has
5  traditional religious and cultural importance to Indian tribes and to Plaintiffs. Consequently,
6  Plaintiffs will be seriously harmed by Defendants' failure to comply with NHPA.

7      17.    Under *Amendment No. 1* (Exhibit "A"), Defendants were required to perform the
8  NHPA-prescribed consultations with Plaintiff LA CUNA. Even in the absence of *Amendment*
9  *No. 1*, Defendants were required to perform the NHPA-prescribed consultations for the benefit
10  of Plaintiffs (among others).

11      18.    Defendants failed to perform the NHPA-prescribed consultations for the Project.
12  Their failure in this regard was contrary to NHPA and arbitrary, capricious, an abuse of
13  discretion, or otherwise not in accordance with law as required by the APA.

14      19.    Plaintiffs, their respective members, and other members of the public have been
15  harmed as a result of Defendants' violations of NHPA and the APA because they have been
16  denied the benefits and protections provided by compliance with those laws. By way of
17  example and without limitation, Plaintiff, its members, the public, and the decision-makers who
18  approved and are carrying out the Project were not fully informed about the traditional religious
19  and cultural importance attached by Plaintiffs and Indian tribes to the federal (public) land that
20  will be affected by the Project.

21              **SECOND CLAIM:**
**Violation of National Environmental Policy Act--Ivanpah Project**
22              **(Against All Defendants)**

23      20.    Paragraphs 1 through 19 are fully incorporated into this paragraph.

24      21.    NEPA requires every federal agency to prepare an environmental impact
25  statement ("EIS") for every major action significantly affecting the quality of the human
26  environment that the agency proposes to approve or carry out. In general, the EIS must
27  adequately address (*i*) the proposed action's environmental impact, (*ii*) any adverse
28  environmental effects that cannot be avoided if the proposed action is implemented, (*iii*)

alternatives to the proposed action, (*iv*) the relationship between local short-term uses of the environment and the maintenance and enhancement of long-term productivity, (*v*) any irreversible and irretrievable commitments of resources that would be involved in the proposed action if implemented, (*vi*) mitigation measures for the proposed action, and (*vii*) cumulative impacts for the proposed action.

22.     Defendants have not prepared an adequate EIS for the Project even though it is a major action proposed to be approved and carried out by at least one federal agency and has the potential to affect the quality of the human environment, including but not limited to the environment in the California Desert Conservation Area.

23.     Defendants' failure to prepare an adequate EIS for the Project was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

24.     Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the impacts of, mitigation measures for, and alternatives to the Project prior to the decision to approve and carry out the Project.

**THIRD CLAIM:**
**Violation of National Environmental Policy Act--Ivanpah Project**
**(Against All Defendants)**

25.     Paragraphs 1 through 24 are fully incorporated into this paragraph.

26.     NEPA (under *Kleppe v. Sierra Club*, 427 U.S. 390 (1976)) requires the environmental consequences of several proposals that will have cumulative or synergistic environmental impacts upon a region to be considered together in a programmatic EIS. Section 1502.4(b) of Title 40 of the Code of Federal Regulations provides that federal agencies "shall prepare statements on broad actions so that they are relevant to policy and are timed to coincide with meaningful points in agency planning and decisionmaking."

27.     The Project is a major federal action, and together with other major solar-electricity generation projects it constitutes broad action by Defendants.

28.     Defendants did not prepare a programmatic EIS for the Project (and other solar-electricity generation projects).

29.     With regard to the Project, Defendants' failure to prepare a programmatic EIS for it (and other solar-electricity generation projects) was contrary to NEPA and arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as required by the APA.

30.     Plaintiffs, their respective members, and other members of the public have been harmed as a result of Defendants' violations of NEPA and the APA because they have been denied the benefits and protections provided by compliance with those laws.  By way of example and without limitation, Plaintiff, its members, the public, and the decision-makers who approved and are carrying out the Project were not fully informed about the programmatic impacts of, mitigation measures for, and alternatives to the Project prior to the decision to approve and carry out the Project.

### FOURTH CLAIM:
**Violation of Federal Land Policy and Management Act--Ivanpah Project**
**(Against All Defendants)**

31.     Paragraphs 1 through 30 are fully incorporated into this paragraph.

32.     FLPMA Section 302(b) provides as follows: "In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands, including, but not limited to, long-term leases to permit individuals to utilize public lands for habitation, cultivation, and the development of small trade or manufacturing concerns: *Provided*, That unless otherwise provided for by law, the Secretary may permit Federal departments and agencies to use, occupy, and develop public lands only through rights-of-way under section 507 of this Act, withdrawals under section 204 of this Act, and, where the proposed use and development are similar or closely related to the programs of

1  the Secretary for the public lands involved, cooperative agreements under subsection (b) of

2  section 307 of this Act: *Provided further,* That nothing in this Act shall be construed as

3  authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands

4  or on lands in the National Forest System and adjacent waters or as enlarging or diminishing

5  the responsibility and authority of the States for management of fish and resident wildlife.

6  However, the Secretary concerned may designate areas of public land and of lands in the

7  National Forest System where, and establish periods when, no hunting or fishing will be

8  permitted for reasons of public safety, administration, or compliance with provisions of

9  applicable law. Except in emergencies, any regulations of the Secretary concerned relating to

10  hunting and fishing pursuant to this section shall be put into effect only after consultation with

11  the appropriate State fish and game department. Nothing in this Act shall modify or change any

12  provision of Federal law relating to migratory birds or to endangered or threatened species.

13  Except as provided in section 314, section 603, and subsection (f) of section 601 of this Act and

14  in the last sentence of this paragraph, no provision of this section or any other section of this Act

15  shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims

16  under that Act, including, but not limited to, rights of ingress and egress.  In managing the

17  public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent

18  unnecessary or undue degradation of the lands."

19         33.  FLPMA Section 601(d) provides as follows: "The Secretary [of the Interior], in

20  accordance with section 202 of this Act, shall prepare and implement a comprehensive, long-

21  range plan for the management, use, development, and protection of the public lands within the

22  California Desert Conservation Area. Such plan shall take into account the principles of

23  multiple use and sustained yield in providing for resource use and development, including, but

24  not limited to, maintenance of environmental quality, rights-of-way, and mineral development.

25  Such plan shall be completed and implementation there-of initiated on or before September 30,

26  1980."

27         34.  FLPMA Section 601(f) provides as follows: "Subject to valid existing rights,

28  nothing in this Act shall affect the applicability of the United States mining laws on the public

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.         **Page 9**

1   lands within the California Desert Conservation Area, except that all mining claims located on

2   public lands within the California Desert Conservation Area shall be subject to such reasonable

3   regulations as the Secretary may prescribe to effectuate the purposes of this section. Any patent

4   issued on any such mining claim shall recite this limitation and continue to be subject to such

5   regulations. Such regulations shall provide for such measures as may be reason-able to protect

6   the scenic, scientific, and environmental values of the public lands of the California Desert

7   Conservation Area against undue impairment, and to assure against pollution of the streams and

8   waters within the California Desert Conservation Area."

9        35.    Defendants have not complied with FLPMA as it relates to the Project even

10   though it is located on federal (public) land and is within the California Desert Conservation

11   Area and subject to the CDCA Plan.

12        36.    Defendants' failure to comply with the CDCA Plan and take all action necessary

13   to prevent unnecessary or undue degradation of the federal (public) land affected when they

14   approved the Project was contrary to FLPMA and arbitrary, capricious, an abuse of discretion,

15   or otherwise not in accordance with law as required by the APA.

16        37.    Plaintiffs, their respective members, and other members of the public have been

17   harmed as a result of Defendants' violations of FLPMA and the APA because they have been

18   denied the benefits and protections provided by compliance with those laws. By way of

19   example and without limitation, Plaintiff, its members, and the public will have to endure

20   unnecessary or undue degradation of the federal (public) land affected by the Project and will

21   lose the protections provided for this land by the CDCA Plan.

22                           **FIFTH CLAIM:**

**Violation of Native American Graves Protection & Repatriation Act--Ivanpah Project**

23                             **(Against All Defendants)**

24        38.    Paragraphs 1 through 37 are fully incorporated into this paragraph.

25        39.    Section 3(b) of the NAGPRA provides as follows: "Native American cultural

26   items not claimed under subsection (a) of this section shall be disposed of in accordance with

27   regulations promulgated by the Secretary [of the Interior] in consultation with the review

28

1  committee established under section [8] of this [Act], Native American groups, representatives
2  of museums and the scientific community."

3      40.    Section 3(c) of the NAGPRA provides as follows: "The intentional removal from
4  or excavation of Native American cultural items from Federal or tribal lands for purposes of
5  discovery, study, or removal of such items is permitted only if--

6          "(1) such items are excavated or removed pursuant to a permit issued
7          under section 470cc of Title 16 [of the U.S. Code] which shall be consistent with
8          this [Act];

9          "(2) such items are excavated or removed after consultation with or, in the
10         case of tribal lands, consent of the appropriate (if any) Indian tribe or Native
11         Hawaiian organization;

12         "(3) the ownership and right of control of the disposition of such items
13         shall be as provided in subsections (a) and (b) of this section; and

14         "(4) proof of consultation or consent under paragraph (2) is
15         shown."

16     41.    Defendants' approval of the Project will result in the intentional excavation,
17  disposal, or other removal of Native American cultural items (including human remains) known
18  to be or strongly suspected of being on the site of the Project without compliance with the
19  conditions necessary for excavation, disposal, or other removal.  By way of example and not
20  limitation, Defendants have not consulted with or obtained the consent of the Indian tribe whose
21  cultural remains or located on the site of the Project.

22     42.    Defendants' failure to consult with and obtain the consent of the appropriate
23  Indian tribe prior to excavating, disposing of, or otherwise removing Native American cultural
24  items (including human remains) known to be or strongly suspected of being on the site of the
25  Project was contrary to the NAGPRA and arbitrary, capricious, an abuse of discretion, or
26  otherwise not in accordance with law as required by the APA.

27     43.    Plaintiffs, their respective members, and other members of the public have been
28  harmed as a result of Defendants' violations of the NAGPRA and the APA because they have

1   been denied the benefits and protections provided by compliance with those laws.  By way of
2   example and without limitation, Plaintiff, its members, and the public (including the appropriate
3   Indian tribe) will have to endure the excavation, disposal, or other removal of Native American
4   cultural items (including human remains) located on the site of the Project without the necessary
5   consultation and consent prior to Defendants' approval of the Project.

6                              **PRAYER FOR RELIEF**

7           FOR ALL THESE REASONS, Plaintiffs respectfully pray for the following relief,
8   conjunctively or disjunctively as the Court determines to be appropriate, against Defendants
9   (and any and all other parties who may oppose Plaintiff in this proceeding):

10          A.      On the First Claim:

11                  1.      A judgment or other final order determining or declaring that Defendants
12  failed to comply fully with the NHPA and the APA as they relate to the Project (including all
13  associated entitlements and leases) and that the Project's approval was illegal in at least one
14  respect, rendering the approval null and void;

15                  2.      A judgment or other final order determining or declaring that Defendants
16  must fully comply with the NHPA and the APA before final approval of the Project may be
17  granted; and

18                  3.      Injunctive relief prohibiting Defendants (and any and all persons acting at
19  the request of, in concert with, for the benefit of, in privity with, or under one or more of them)
20  from taking any action on any aspect of, in furtherance of, or otherwise based on the Project
21  unless and until Defendants fully comply with all applicable provisions of the NHPA and the
22  APA, as determined by the Court.

23          B.      On the Second and Third Claims:

24                  1.      A judgment or other final order determining or declaring that Defendants
25  failed to comply fully with NEPA and the APA as they relate to the Project (including all
26  associated entitlements and leases) and that the Project's approval was illegal in at least one
27  respect, rendering the approval null and void;

28

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF ETC.                    Page 12

2.     A judgment or other final order determining or declaring that Defendants must prepare an EIS for the Project fully in accordance with NEPA and the APA before final approval of the Project may be granted; and

3.     Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of NEPA and the APA, as determined by the Court.

C.     On the Fourth Claim:

1.     A judgment or other final order determining or declaring that Defendants failed to comply fully with FLPMA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

2.     A judgment or other final order determining or declaring that Defendants must fully comply with FLPMA and the APA before final approval of the Project may be granted; and

3.     Injunctive relief prohibiting Defendants (and any and all persons acting at the request of, in concert with, for the benefit of, in privity with, or under one or more of them) from taking any action on any aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants fully comply with all applicable provisions of FLPMA and the APA, as determined by the Court.

D.     On the Fifth Claim:

1.     A judgment or other final order determining or declaring that Defendants failed to comply fully with the NAGPRA and the APA as they relate to the Project (including all associated entitlements and leases) and that the Project's approval was illegal in at least one respect, rendering the approval null and void;

1     2.     A judgment or other final order determining or declaring that Defendants

2 must fully comply with the NAGPRA and the APA before final approval of the Project may be

3 granted; and

4     3.     Injunctive relief prohibiting Defendants (and any and all persons acting at

5 the request of, in concert with, for the benefit of, in privity with, or under one or more of them)

6 from taking any action on any aspect of, in furtherance of, or otherwise based on the Project

7 unless and until Defendants fully comply with all applicable provisions of the NAGPRA and

8 the APA, as determined by the Court.

9     E.     All legal fees and other expenses incurred in connection with this proceeding,

10 including but not limited to reasonable attorney fees as authorized by law; and

11     F.     Any and all further relief that this Court may deem appropriate.

12     Date: January 13, 2011.         Respectfully submitted,

13                                   **BRIGGS LAW CORPORATION**

14

15                   By:                                                                             
Cory J. Briggs

16

17                   Attorneys for Plaintiffs La Cuna de Aztlan Sacred
Sites Protection Circle Advisory Committee,

18                   CAlifornians for Renewable Energy, Alfredo Acosta
Figueroa, Phillip Smith, Patricia Figueroa, Ronald

19                   Van Fleet, and Catherine Ohrin-Greipp

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS
RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE
NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL
ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND
MANAGEMENT ACT, AND THE NATIVE AMERICAN GRAVES
PROTECTION AND REPATRIATION ACT**

Exhibit "A"

**Amendment No. 1 to Memorandum of Understanding**
**Between**
**United States Department of the Interior**
**Bureau of Land Management**
**and the**
**Southern Low Desert Resource Conservation and Development Council**

This Amendment No. 1 modifies the current Memorandum of Understanding (MOU) that was signed by the Bureau of Land Management (BLM) and the Southern Low Desert Resource Conservation and Development Council (Council) in July 2006 to include the La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee (LCASSPC) and the Blythe Area Chamber of Commerce and Tourist Information Center (Chamber) in the partnership for protection of cultural resources in the BLM Yuma Field Office planning area.

Section "II. Definitions" is amended as follows:

A. BLM: The Bureau of Land Management's Yuma Field Office, which has management responsibility for the public land area covered under this MOU.

B. Council: The Southern Low Desert Resource Conservation and Development Council (a 501(c)(3) non-profit / non-governmental conservation and community development organization).

C. LCASSPC: La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee. A 501(c)(3) nonprofit organization that is comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites that are located along the Colorado River from Needles, California, to Yuma, Arizona.

D. Chamber: The Blythe Area Chamber of Commerce and Tourist Information Center. Provides information to visitors and the community about the Blythe Intaglios and other important cultural resources in the vicinity of Blythe, California.

E. MOU signatories: Refers to all agencies and organizations that have a formalized partnership through the July 2006 MOU and associated amendments.

Section "III. Statement of MOU Purpose" is amended as follows:

This Memorandum of Understanding (MOU) will provide a means for the ~~BLM the Council~~ MOU signatories to work in partnership to enhance cultural resources protection, conservation, and interpretation efforts on BLM lands within the Yuma Field Office's jurisdiction and the Southern Low Desert RC&D area. The purpose of this MOU is to assist the BLM with its responsibilities under Section 110 of the National Historic Preservation Act of 1966, as amended.

The ~~BLM, and the Council~~ MOU signatories agree that all projects conducted under this MOU will be carried out by qualified specialists. Contractors hired for projects must meet

BLM standards. Projects that may be conducted under this MOU include but are not limited to cultural resources survey, archaeological site recordation, National Register of Historic Places nominations, ethnographic studies with interested Native American tribes, design and installation of site protection and interpretation measures, and the production of interpretive materials for the public. All projects will be coordinated with and approved by the BLM.

The ~~BLM and the Council~~ MOU signatories have a common objective of helping to bring about the conservation, development, and wise use of archaeological and historical resources in the southeastern California desert area. Therefore, ~~both the BLM and the Council~~ the MOU signatories deem this effort of mutual benefit to ~~both~~ all parties. We hereby agree as follows:

A. The Council agrees to:

    1. Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Council agrees to diligently work towards the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

    2. Assist with any environmental documents deemed necessary for the completion of joint projects within the mutual boundary of the Council and BLM.

    3. Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

    4. Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items within the mutual boundaries of the BLM and the Council.

B. LCASSPC agrees to:

    1. Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources and sacred sites. Specifically LCASSPC agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the good of the future generations and the public good.

    2. Assist with any environmental documents deemed necessary for the completion of joint projects.

    3. Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

    4. Assist in the solicitation of funds from outside organizations and agencies to complete agree upon projects or work items.

C.  The Chamber agrees to:

    1.  Work cooperatively with BLM to coordinate and facilitate the development of plans for the conservation, protection, and interpretation of desert resources. Specifically, the Chamber agrees to diligently work toward the immediate and future protection of cultural resources, including the Blythe Intaglios, for the public good.

    2.  Provide a public outreach program to encourage and promote active public participation in the protection of desert resources.

    3.  Assist in the solicitation of funds from outside organizations and agencies to complete agreed upon projects or work items.

D.  BLM agrees to:

    1.  Work cooperatively ~~with the Council~~ on projects of mutual benefit to ~~BLM and the Council~~ the MOU signatories.

    2.  Provide technical and planning assistance for projects of mutual benefit to the ~~BLM and the Council~~ MOU signatories.

    3.  Initiate any environmental assessment documents deemed necessary for the completion of any agreed upon joint projects ~~within the mutual boundaries of the BLM and the Council~~.

    4.  Assist with the preparation of statements of work and hiring of contractors to complete the agreed upon projects.

    5.  Cooperate and assist (when appropriate) with seeking funds to complete agreed upon joint projects.


Section "IV.  Terms of the MOU" is amended as follows:

A.  The following individuals are designated as the liaison between the ~~BLM and the Council~~ MOU signatories.

    1.  Bureau of Land Management
       Yuma Field Office
       ~~Rebecca Heick~~ James T. Shoaff, Field Manager
       2555 E Gila Ridge Road
       Yuma, AZ 85365
       PH:  (928) 317-3200
       FX:  928-317-3250

    2.  Southern Low Desert Resource Conservation & Development Council
       Thomas Burgin, President
       53990 Enterprise Way, 6B

Coachella, CA 92236
PH:  760-391-9002
FX:  760-391-9813

3.  La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee
    Alfredo A. Figueroa
    Escuela de la Raza Unida
    137 N. Broadway
    Blythe, CA 92225
    PH:  (760) 922-6442
    E-mail: lacunadeaztlan@aol.com

4.  Blythe Area Chamber of Commerce and Tourist Information Center
    Jim Shipley, COO
    201 S Broadway
    Blythe, CA 92225
    PH:  760-922-8166
    FX:  760-922-4010
    E-mail: blythecoc@yahoo.com

B.  Nothing herein is intended to conflict with existing BLM, Department of the Interior orders, or Council directives.  If any terms or conditions of this MOU are inconsistent with existing BLM orders or Council directives, those portions of this MOU are invalid.

By signing below, the partners show their agreement to MOU Amendment No. 1 as described in this document.

Thomas Burgin, President of the Southern Low Desert Resource Conservation and Development Council.

Signed: _____     Date _MAR. 6, 2008_

Alfredo Figueroa, La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee.

Signed: _Alfredo Figueroa_     Date _Feb. 15, 2008_

Jim Shipley, Blythe Area Chamber of Commerce and Tourist Information Center.

Signed: _____     Date _FEB 29, 2008_

James T. Shoaff, Field Manager of the Bureau of Land Management Yuma Field Office.

Signed: _____     Date _March 14, 2008_

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT, THE NATIONAL HISTORIC PRESERVATION ACT, THE NATIONAL ENVIRONMENTAL POLICY ACT, THE FEDERAL LAND POLICY AND MANAGEMENT ACT, AND THE NATIVE AMERICAN GRAVES PROTECTION AND REPATRIATION ACT**

Exhibit "B"

# Amending Land Use Plans with Programmatic EISs

BLM 2009 National Land Use Planning Conference
"Keeping Pace with Change"

# Session Overview

- ○ Programmatic EISs and Tiering (S. Stewart)

- ○ BLM Programmatic EISs (S. Stewart)

- ○ Programmatic EISs Lessons Learned (K. Winthrop)

- ○ Programmatic vs. Site-Specific EISs (I. Hlohowskyj)

# What is a Programmatic EIS (PEIS)?

▶ EIS – CEQ regulations do not define the term "Programmatic Analyses" separately.

▶ 40 CFR 1502.4(b) – EISs may be prepared for broad Federal actions such as the adoption of new agency programs or regulations.

▶ 40 CFR 1502.4(c) – When preparing statements on broad actions agencies may find it useful to evaluate proposals in one of the following ways:

  · Geographically, actions occurring in the same general location
  · Generically, actions that have relevant similarities
  · By stage of technological development

# Types of Actions that PEISs Support

▸ Adopting Official Policy
  ○ National–level rulemaking
  ○ Adoption of agency–wide policy

▸ Adopting Formal Plan
  ○ Adoption of an agency plan for a group of related projects

▸ Adopting Agency Program
  ○ A new agency mission or initiative
  ○ Redesign of existing programs

▸ Approving Site–Wide or Area–Wide Actions
  ○ Similar actions in a region
  ○ Multiple actions that share a common geography or timing

# PEISs Generally...

▸ Used for broad geographic areas

▸ Assess impacts across a span of conditions (facilities, geographic regions or multi-project programs)

▸ Emphasize cumulative impacts

▸ Emphasize policy level alternatives

▸ Emphasize program level mitigation measures and BMPs

▸ Do not define facilities or specific sites

▸ Tend to be more generic and conceptual than project-specific EISs

# Tiering

- In cases where a broad policy, plan, program or project will later be translated into site-specific projects, subsequent analyses are referred to as "tiered" analyses.

- 40 CFR 1508.28 – "Tiering" refers to the coverage of general matters in a broader EIS with subsequent narrower EISs or EAs incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.

# Benefits of PEISs and Tiering

- Focus on issues ripe for decision at each level of environmental review (40 CFR 1502.20)

- Opportunity to evaluate potential cumulative impacts of the reasonably foreseeable actions under a program (40 CFR 1502.4(c))

- Reduce paperwork (40 CFR 1500.4)

- Reduce delay (40 CFR 1500.5)

- Opportunity to prepare EA/FONSI for individual actions when there are no new significant impacts (NEPA Handbook 5.2.2)

# PEIS Challenges

▸ Scope

▸ Content

▸ Specificity of Analysis

▸ Alternatives

▸ Addressing Deferred Issues

▸ Handling Proposals while Preparing a PEIS

# Examples of BLM PEISs

| Name | Action | Agency | Status |
|------|--------|--------|--------|
| **Wind Energy** AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 52 land use plans to identify lands suitable for wind energy development ROW applications (no plans amended in AZ or CA). | BLM | ROD signed December, 2005 |
| **Oil Shale and Tar Sands** CO, UT, WY | Amend 10 land use plans to allocate lands suitable for consideration of leasing proposals. | BLM | ROD signed November, 2008 |
| **Geothermal Leasing** AK, AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 114 land use plans to identify lands as open or closed to geothermal leasing and to adopt stipulations, BMPs and procedures for leasing. | BLM, FS | ROD signed December, 2008 |
| **West-Wide Energy Corridors** AZ, CA, CO, ID, MT, NV, NM, OR, UT, WA, WY | Amend 130 land use plans to designate energy transport corridors on federal lands suitable for proposed pipeline and transmission line ROW applications. | BLM, FS, DOD, DOE, FWS, NPS | RODs signed January, 2009 (BLM, FS) |
| **Solar Energy Development** AZ, CA, CO, NM, NV, UT | Goal is to amend land use plans to identify lands suitable for solar energy development ROW applications. | BLM | Draft PEIS scheduled for Summer, 2009 |

# BLM PEIS Decisions

▶ Allocate lands as open or closed to leasing or right-of way authorizations; designate energy transport corridors

▶ Develop a reasonably foreseeable development scenario

▶ Adopt stipulations, BMPs, mitigation measures and Interagency operating procedures applicable to future projects

▶ Adopt standard processes and procedures for leasing or right-of way authorizations

▶ Amend BLM land use plans to adopt all of the above

# BLM PEIS Implementation

- PEIS's do not authorize any on–the–ground activities or waive environmental review for subsequent individual actions.

- All future development projects must be in conformance with the existing land use plan as amended.
  - Land use plan amendments via a PEIS adopt the resource allocations, reasonably foreseeable development scenario, stipulations, BMPs and procedures.

- Site–specific concerns and the development of additional mitigation measures will be addressed in project–level reviews tiered to the analysis in the PEIS.