1 BRIGGS LAW CORPORATION [FILE: 1190.05]
Cory J. Briggs (State Bar no. 176284)
2 Mekaela M. Gladden (State Bar no. 253673)
99 East "C" Street, Suite 111
3 Upland, CA 91786
Telephone: 909-949-7115
4 Facsimile: 909-949-7121

5 Attorneys for Plaintiffs La Cuna de Aztlan Sacred Sites
   Protection Circle Advisory Committee, CAlifornians for
6   Renewable Energy, Alfredo Acosta Figueroa, Phillip Smith,
   Patricia Figueroa, Ronald Van Fleet, Catherine Ohrin-Greipp,
7   Rudy Martinez Macias, and Gilbert Leivas

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10 _____
LA CUNA DE AZTLAN SACRED SITES )
11 PROTECTION   CIRCLE   ADVISORY )    CASE NO.2:11-CV-00400-DMG-DTB
COMMITTEE *et al.*,               )
12                                )    P L A I N T I F F S '   S E P A R A T E
           Plaintiffs,           )    STATEMENT OF FACTS
13                                )
      vs.                        )    Hearing Date:    August 31, 2012
14                                )    Hearing Time:    9:30 a.m.
UNITED  STATES  DEPARTMENT  OF )    Courtroom:       7
15 THE INTERIOR *et al.*,          )    Judge:           Hon. Dolly M. Gee
                                 )
16           Defendants.          )
_____)

17

18

19

20        Plaintiffs respectfully submit this separate statement of facts in support of their

21 motion to dismiss.

22

23

24

25

26

27

28

**Standing: Section IV(A)**

| | | |
|---|---|---|
| 1 | Plaintiff Alfredo Acosta Figueroa is an individual plaintiff in this action. His mother was Chemehuevi and his father was Yaqui. | Figueroa Decl. ¶ 1 |
| 2 | Plaintiff Figueroa has been studying sacred sites along the Colorado River and elsewhere for the past 54 years. He has personally studied the geoglyphs and sacred sites in the region covered by the four solar projects that are the subject of this lawsuit, including the Ivanpah project ("Ivanpah project). In fact, he is the author of the book *Ancient Footprints of the Colorado River*. | Figueroa Decl. ¶ 4 |
| 3 | In December 2009, Plaintiff Figueroa was designated by the director of the Chemehuevi tribe's cultural center to serve as one of the Tribal Sacred Sites Monitors who represent the tribe in educating the United States about the location and protection of sacred sites and artifacts and Chemehuevi human remains on Chemehuevi ancestral lands. His designation was done in part to ensure that the tribe would have a sufficient number of contacts with the United States when it came time to consult on issues of importance to the tribe. | Figueroa Decl. ¶ 5 |

| | | |
|---|---|---|
| 4 | Plaintiff Figueroa is not the only Tribal Sacred Sites Monitor for the Chemehuevi tribe.   The practice among Tribal Sacred Sites Monitors has been to notify the other Monitors whenever consultations have been initiated by the United States government.  He received no such notification with regard to any of the Projects.   Additionally, he has conferred with several members of the Chemehuevi tribal council to find out whether the United States government initiated any form of consultations with the council directly, without going through any of the Monitors.   The council members informed him that no consultations were ever initiated. Based on the foregoing, it is his belief that no Tribal Monitors were contacted for the purpose of any form of consultations and that no consultations were initiated by the United States government for the Project. | Figueroa Decl. ¶ 6 |

| | | |
|---|---|---|
| 5 | For thousands of years, the Chemehuevi people have traditionally occupied, traveled, traded, and utilized resources within a broad geographical area located primarily within the desert lands of modern-day Southern California and Arizona.  The traditions of visiting the sacred sites and engaging in ceremonies on the land express the history and tradition of our people. The Chemehuevi legacy is deeply etched across the face of the land.  In fact, the name Ivanpah is taken from a Chemehuevi word "Avimpah" or "Aavimpah." | Figueroa Decl. ¶ 7 |
| 6 | The Ivanpah Project is within the focus area of the Native American Creation Story (Creation of the World)--for the Chemehuevi and other tribes--extending 100 miles to the east and 100 miles to the west of the Colorado River from Spirit Mountain (about 15 miles northwest of Laughlin, Nevada) in the north to the Gulf of California (in Mexico) in the south.  The Project area has sacred sites and artifacts that have cultural significance to the Chemehuevi tribe and others within Chemehuevi ancestral lands and is the final resting place for tribal human remains. | Figueroa Decl. ¶ 8; Smith Decl. ¶ 5 |

| 8 | The Ivanpah Project has significant portions of the Salt Song Trails running through it.  The Trails span four states and represent ancient villages, gathering sites for salt and medicinal herbs, trading routes, historic sites, sacred areas, ancestral lands, and pilgrimages in a physical and spiritual landscape of stories and songs, and the Salt Songs are sung during memorial ceremonies that follow the trail. | Figueroa Decl. ¶ 9; Smith Decl. ¶ 7 |
| 9 | Plaintiff Figueroa participated in the Ivanpah Sacred Run on multiple occasions, which is a long-distance ceremonial run from various Chemehuevi markers on the land. As part of the ceremonial ritual, they sing, chant, and tell stories of our ancestors, history, and the Creation Story.    In October 2010, he participated in this ceremonial ritual with four generations of his family. | Figueroa Decl. ¶ 10 |
| 10 | The Cresote-Bursage Trail also crosses the middle of the project site. This is a prehistoric trail connecting Clark Mountain, which is a sacred mountain, to the Ivanpah playa. | Figueroa Decl. ¶ 11 |

| 11 | Metamorphosis Hill is located roughly 100 yards from the project site boundary in the middle of the Ivanpah Valley.  At the top of Metamorphosis Hill is a triangle mount pointing to three different sacred mountains: Clark Mountain to the west, Charleston Peak to the north, and Spirit Mountain to the east.  The Ivanpah Project, once completed, will impede the view from Metamorphosis Hill to Clark Mountain with the glare from the massive solar project. | Figueroa Decl. ¶ 12; Smith Decl. ¶ 9 |
| 12 | Within the Project's boundaries are the remains of an ancient Chemehuevi Village. The exact amount of desecration to this site remains unknown as it will be directly affected through various stages of construction and the tribe has been unable to provide meaningful comments on its significance through the National Historic Preservation Act, Section 106 consultation process. | Figueroa Decl. ¶ 13; Smith Decl. ¶ 10 |

| | | |
|---|---|---|
| 13 | The Ivanpah Project is home to the desert tortoise. Among the Chemehuevi, the tortoise is a symbol of the spirit of the people and is considered to hold sacred significance. The tortoise has provided inspiration for traditional Chemehuevi and other tribal songs. This tradition and inspiration goes back thousands of years. | Figueroa Decl. ¶ 14; Smith Decl. ¶ 11 |

| | | |
|---|---|---|
| 14 | The cultural heritage, including the land and language, of Native American tribal people has been systematically attacked at the hands of United States government policies over the past 150 years.  Since the Treaty of Guadalupe Hidalgo of 1848, our native aboriginal lands have been reduced to the current small reservation.    The Native American languages have been lost in large part due to attempts by the federal government to stop people from speaking the language.  For example, at the Indian boarding schools, children have been prohibited from speaking indigenous languages.  Because so much has been lost, our cultural survival now depends on what remains on the ground, on the ancestral lands where the Projects will be built.  Cultural sites allow for the revival of languages through stories and songs explaining the features, land, and practices of traditional ceremonies including spiritual runs and the singing of Salt Songs. | Figueroa Decl. ¶ 15 |

| | | |
|---|---|---|
| 15 | While artifacts and features are important in and of themselves, it is the location of the artifacts or features in their environment that serve as the strongest links to our past.    Thus, harm to the encompassing surrounding areas is tantamount to direct harm to the artifacts and features themselves. For example, The Alter on Metamorphic Hill, a sacred site in the Ivanpah Valley, indicates what happened in ancient times and how people used the land. | Figueroa Decl. ¶ 16 |
| 16 | Not only are the cultural sites directly impacted, but it is important to note that part of the significance of the sites is how they connect and relate to one another.  The sites, both on and off the project site, together tell the Creation Story. | Figueroa Decl. ¶ 19 |
| 17 | Physical grading at the project site will destroy hundreds if not thousands of culturally significant sites, artifacts, and remains of the Chemehuevi and other Native American tribes--none of which can be repaired, replaced, or re-created. The destruction will prevent me, my family, and others of Chemehuevi descent from participating in sacred ceremonial rituals. | Figueroa Decl. ¶ 20 |

| | | | |
|---|---|---|---|
| 18 | In sum, the destruction and decimation of the sacred sites and the connections between them would result in an incalculable loss to our culture. | Figueroa Decl. ¶ 22 |
| 19 | I have tried to visit the Ivanpah Project site several times since the Project was approved. The site has fencing and when I try to get through, guards tell me that I cannot be on the site and threaten to arrest me. | Figueroa Decl. ¶ 23 |
| 20 | Plaintiff Ronald Van Fleet Sr. is a member and descendent of the Fort Mojave Indian Tribe. | Van Fleet Decl. ¶ 2 |
| 21 | Plaintiff Van Fleet is a Bureau of Land Management-recognized tribal monitor. In other proceedings, the Bureau of Land Management has contacted him to conduct government-to-government consultation with the Fort Mojave Indian Tribe and as a tribal elder with knowledge of cultural and religious issues. | Van Fleet Decl. ¶ 3 |

| | | |
|---|---|---|
| 22 | In 1991, he was appointed as the tribal spokesperson on environmental issues.  In 1992, he was appointed by the United Nations as a caretaker for environmental issues along the Colorado River. He has been studying sacred sites in the desert and particularly along the Colorado River for my entire life. | Van Fleet Decl. ¶ 4 |
| 23 | He lives in Needles, California. | Van Fleet Decl. ¶ 5 |
| 24 | His knowledge of sacred sites has been passed down by his elders through the practice of the ceremonies and retelling of ancient stories at sacred locations. | Van Fleet Decl. ¶ 6 |
| 25 | Plaintiff Van Fleet regularly visits the site where the Ivanpah Solar Project is being constructed.  For example, the administrative record in this action contains a picture of him in Ivanpah Valley on a sacred ridge that overlooks the Ivanpah Solar Project site in the *Los Vegas Review-Journal* article "Tribes join protests of Ivanpah solar project: Sacred site, vital habitat merit protection, critics say," dated September 14, 2010. (ISEGS00010096).  He visits the area of the Ivanpah Solar Project multiple times a year. | Van Fleet Decl. ¶ 7 |

| 26 | The Ivanpah Project is in a sacred place. Plaintiff Van Fleet's ancestors have come to this area for centuries. Not only does he visit the site for his own personal religious fulfillment, but, as a tribal elder, he feels an obligation to protect certain sacred locations. Depriving him of access to the site not only deprives him of his ability to perform certain rituals that are important to his own spiritual journey, but it prevents him from being able to pray for the land, animals and spirits at the location the way our beliefs require of him. The rituals that are performed at this site cannot be meaningfully replicated in accordance with his traditional and religious values at any other location. | Van Fleet Decl. ¶ 8 |
| 27 | The Ivanpah Project has significant portions of the Salt Song Trails running through it. The Trails span four states and represent ancient villages, gathering sites for salt and medicinal herbs, trading routes, historic sites, sacred areas, ancestral lands, and pilgrimages in a physical and spiritual landscape of stories and songs, and the Salt Songs are sung during memorial ceremonies that follow the trail. | Van Fleet Decl. ¶ 9 |

| | | | |
|---|---|---|---|
| 28 | Plaintiff Van Fleet has participated in the Ivanpah Sacred Run on multiple occasions, which is a long-distance ceremonial run from various Chemehuevi and Mojave markers on the land.  As part of the ceremonial ritual, we sing, chant, and tell stories of our ancestors, history, and the Creation Story.  In October 2010, I participated in this ceremonial ritual. The purpose of this particular Sacred Run was to pray for the land and animals that would suffer as a result of the Ivanpah Solar Energy Project. | Van Fleet Decl. ¶ 10 | |
| 29 | Metamorphosis Hill is located roughly 100 yards from the project site boundary in the middle of the Ivanpah Valley.   At the top of Metamorphosis Hill is a triangle mount pointing to three different sacred mountains: Clark Mountain to the west, Charleston Peak to the north, and Spirit Mountain to the east.   The Ivanpah Project, once completed, will impede the view from Metamorphosis Hill to Clark Mountain with the glare from the massive solar project. | Van Fleet Decl. ¶ 11 | |
| 30 | In addition to building on a sacred area, the Ivanpah Project also impedes views from Clark Mountain, which Plaintiff Van Fleet enjoys aesthetically and are important for religious reasons. | Van Fleet Decl. ¶ 12 | |

| | | |
|---|---|---|
| 31 | I was not consulted as a tribal elder, representative of the Fort Mojave or as a knowledgeable person with respect to the Ivanpah Project by the Bureau of Land Management. | Van Fleet Decl. ¶ 13 |
| 32 | Since construction has began at the Ivanpah Project site, Plaintiff Van Fleet has tried to visit, but have been told that I will be arrested if I go onto the site. | Van Fleet Decl. ¶ 14 |
| 33 | Plaintiff Phillip Smith is a Chemehuevi elder and a member of the Colorado River Indian Tribe. | Smith Decl. ¶ 2 |
| 34 | Plaintiff Phillip Smith regularly visits the site where the Ivanpah Solar Project is being constructed. For example, the administrative record in this action contains a picture of him in Ivanpah Valley on a sacred ridge that overlooks the Ivanpah Solar Project site in the *Los Vegas Review-Journal* article "Tribes join protests of Ivanpah solar project: Sacred site, vital habitat merit protection, critics say," dated September 14, 2010. (ISEGS00010096). He visits the area of the Ivanpah Solar Project multiple times a year. | Smith Decl. ¶ 4 |

| | | |
|---|---|---|
| 35 | The Ivanpah Project is in a sacred place. Plaintiff Smith's ancestors have come to this area for centuries. Not only does he visit the site for his own personal religious fulfillment, but, as a tribal elder, he feels an obligation to protect certain sacred locations. Depriving him of access to the site not only deprives him of his ability to perform certain rituals that are important to his own spiritual journey, but it prevents him from being able to pray for the land, animals and spirits at the location the way our beliefs require of him. The ceremonies and rituals he performs at the site cannot be meaningfully replicated and in accordance with his traditional and religious values at any other location. | Smith Decl. ¶ 6 |
| 36 | Plaintiff Smith has participated in the Ivanpah Sacred Run on multiple occasions, which is a long-distance ceremonial run from various Chemehuevi markers on the land. As part of the ceremonial ritual, they sing, chant, and tell stories of our ancestors, history, and the Creation Story. In October 2010, he participated in this ceremonial ritual. The purpose of this particular Sacred Run was to pray for the land and animals that would suffer as a result of the Ivanpah Solar Energy Project. | Smith Decl. ¶ 8 |

37   In addition to building on a sacred area, the Ivanpah Project also impedes views from Clark Mountain, which Plaintiff Smith enjoys aesthetically and are important for religious reasons.

    Smith Decl. ¶ 12

38   Plaintiff Smith tried to participate in the Ivanpah Project review process as a tribal elder.   He attended a meeting and he asked to be consulted on the project.  The Bureau of Land Management took his information, but never consulted with him.

    Smith Decl. ¶ 13

39   Since construction has began at the Ivanpah Project site, Plaintiff Smith tried to visit, but have been told that he will be arrested if he goes onto the site.

    Smith Decl. ¶ 14

40   Michael Boyd is a customer of Pacific Gas and Electric.  His rates will increase as a result of the Ivanpah Project.

    Boyd Decl. ¶ 12

41   Michael Boyd lives in Southern California.  He regularly visited the Ivanpah Project site, before he was denied access due to project construction.   His aesthetic and recreational experience at this location has been adversely impacted by the construction of this Project.

    Boyd Decl. ¶ 13

| | | |
|---|---|---|
| 42 | Michael Boyd is informed and believes that the Ivanpah Project would not have gone forward but for the loan guarantee it received. | Boyd Decl. ¶ 14 |
| 43 | Michael Boyd will suffer the impacts of climate change as a result of greenhouse gas emissions. Not only do these projects contribute greenhouse gas emissions themselves, but they give false assurances that greenhouse gas emissions will be reduced. The assumption is that if these projects were not constructed, more damaging projects would be constructed in their stead, which I do not believe is true. | Boyd Decl. ¶ 15 |
| 44 | Plaintiffs Alfredo Acosta Figueroa, Ronald Van Fleet and Phillip Smith are members of La Cuna de Aztlan Sacred Sites Protection Circle ("La Cuna"). | Smith Decl. ¶ 1; Figueroa Decl. ¶ 2; Van Fleet Decl. ¶ 1 |
| 45 | La Cuna advocates for the preservation of and respect for Native American culture, including physical sites and the protection of culturally and religiously significant plant and animal species. | Smith Decl. ¶ 3; Figueroa Decl. ¶ 2; Van Fleet Decl. ¶ 1 |

| | | |
|---|---|---|
| 45 | La Cuna and others have been actively working with the federal government to protect sacred sites. In 2008, La Cuna and others executed a Memorandum of Understanding with the Bureau of Land Management, Yuma Arizona Field Office to "physically protect the Blythe Giant Intaglios, other geoglyphs and several hundred sacred sites that are located along the Colorado River from Needles, California to Yuma, Arizona." Geoglyphs are images created on the surface of the earth. These large land features are part of a culturally-complex present in the broader region that tell the story of the creation of the world. | Figueroa Decl. ¶ 17 |
| 46 | Unfortunately, there are cultural and sacred sites that have been ignored by the Bureau of Land Management during the drafting of the environmental-review documents for the Ivanpah Project. As a large-scale commercial solar facility, the Project directly and indirectly threaten to destroy the sacred sites and traditions of Native peoples. | Figueroa Decl. ¶ 18 |
| 47 | Plaintiff Figueroa and Michael Boyd are members of CAlifornians for Renewable Energy ("CARE"). | Figueroa Decl. ¶ 3; Boyd Decl. ¶ 1 |

| | | |
|---|---|---|
| 48 | CARE is a non-profit organization formed to promote public education concerning the responsible development of renewable energy and in the preservation and respect for Native American culture. | Figueroa Decl. ¶ 3 |
| 49 | Since its inception, CARE has promoted environmental and social justice, primarily with respect to Native Americans. | Boyd Decl. ¶ 3 |
| 50 | CARE's participation has covered environmental, economic and social issues. CARE was an Intervenor in the California Energy Commission proceeding in the matter of "Application for Certification for the Calico Solar (SES Solar One) Project, Genesis Solar Energy Project, Imperial Valley (SES Solar Two) Project, Solar Millennium Blythe Project, Solar Millennium Palen Project, and Solar Millennium Ridgecrest Project" on the "Consolidated Hearing on Issues Concerning US Bureau of Land Management Cultural Resources Data." | Boyd Decl. ¶ 4 |

| | | |
|---|---|---|
| 51 | In addition to other concerns, CARE is concerned about the socioeconomic impacts of projects. CARE's Native American members suffer the adverse impacts of the projects, particularly those in Southern California, but Native Americans do not benefit from employment as a result of the projects. Native Americans is one of the groups that has been hit hardest by the recession.  One of the things that CARE has done is advocate for jobs, particularly for Native Americans. | Boyd Decl. ¶ 5 |
| 52 | CARE strongly supports the rapid deployment of renewable energy. However, CARE's position is that distributed generation is the better way to reach that goal than utility scale solar because distributed generation is substantially superior in terms of environmental impacts and has the potential to create more jobs. CARE's position is that utility-scale projects, to the extent that are needed, should only be sited on previously-disturbed land that has no agricultural impacts. | Boyd Decl. ¶ 6 |

| | | |
|---|---|---|
| 53 | CARE believes that regulations were necessary to determine the goals and direction of the Section 1705 program. Without regulations, there is no apparent criteria for selecting projects. If the goal was to create jobs, then by the Department of Energy's calculations, solar manufacturing projects like Solyndra, where the estimate was 3,000 jobs for a $535 million loan guarantee, would be the clear winner as compared to a solar generation project like Nextera Energy Resources, LLC's Genesis project, where the estimate is less than 900 jobs created for a $852 million loan guarantee. If the goal was rapid deployment, then solar installation projects like Prologis, which to CARE's knowledge did not require analysis under the National Environmental Policy Act and does not require construction before it becomes operational, appear to be the better choice over projects that required extensive environmental review, permitting, and construction, like many of the solar generation projects, particularly those on California Desert Conservation Area plan land. From CARE's perspective, Congress left a great amount of leeway to the Department of Energy to carry out the loan guarantee program, but wisely required that regulations be issued to | Boyd Decl. ¶ 7 |

| | | |
|---|---|---|
| 54 | If CARE had an opportunity to comment, CARE would have advocated that the loan guarantee program priorities would be best served by prioritizing solar installation projects because those projects have less procedural prerequisites and therefore can be deployed more rapidly, create the most jobs for the amount of money loaned, and are the most environmentally-sensitive option. CARE would have had the opportunity to submit evidence in support of its position. CARE also would have advocated that whatever projects were approved provide job opportunities to the local community. For example, CARE is keenly aware that the projects in the California desert, such as the Ivanpah solar generation project, have devastating environmental consequences and are destroying Native American culturally and religiously significant artifacts, features, and sites, but that Native Americans are not benefitting from the employment opportunities from these projects. CARE also understands that Native Americans are some of the hardest hit from the economic recession. CARE would have submitted evidence to support this contention as well. | Boyd Decl. ¶ 8 |

| | | |
|---|---|---|
| 55 | CARE is an environmental advocate. CARE frequently comments on the environmental shortcomings in environmental documents. CARE is also concerned about the false assurances of greenhouse gas emission reductions. | Boyd Decl. ¶ 9 |
| 56 | CARE generally agrees with the goals set out in Title XVII of the Energy Policy Act of 2005 and the goals in the American Recovery and Reinvestment Act ("ARRA"). CARE's concern in this lawsuit is not the loan guarantee program or the legislation. CARE's concern is that implementation of the regulations as the statute required would have provided the transparency and accountability that the program lacks and would have allowed the opportunity for public and industry input early on. | Boyd Decl. ¶ 10 |

| 57 | While there was no notice and comment opportunity regarding the Section 1705 loan guarantee program of Title XVII of the Energy Policy Act of 2005, CARE was vocal about the loan guarantee program and CARE's view that the Section 1705. CARE commented that the Section 1705 loan guarantee program was not being implemented in a way that furthered the goals of the Energy Policy Act of 2005 or the ARRA. | Boyd Decl. ¶ 11 |

**Background: Section III**

| 58 | Generally speaking, this lawsuit challenges Defendants' actions in connection with a major solar-electricity generation project taking place on federal public land: the *Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Plan* ("Ivanpah Project," "Project," or "ISEGS"). | Administrative Record: [1]<br>Pre-ROD<br>Bates Number: ISEGS0000083<br>General Type: Decisions<br>AR Code (ST): 12-06<br>AR Code (Doc #): 91<br>Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan |

---

[1] The Administrative Record in this action is in four parts: a Pre-ROD CD, a Post-ROD CD, a DOE CD and a Supplement filed electronically. Below the "Administrative Record" label for each item, Plaintiffs have identified which portion of the record the evidence cited can be found along with the bates number and any other relevant identifying information.

59   The Project is designed to generate 370 megawatts of electricity on approximately 3,472 acres of land.

Administrative Record:
Pre-ROD
Bates Number: ISEGS0000089
General Type: Decisions
AR Code (ST): 12-06
AR Code (Doc #): 91
Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan

60   The Project is a development of three solar concentrating power plants using fields of heliostats (elevated mirrors guided by a tracking system) to focus solar energy on boilers located in centralized towers.

Administrative Record:
Pre-ROD
Bates Number: ISEGS0000089
General Type: Decisions
AR Code (ST): 12-06
AR Code (Doc #): 91
Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan

61   The Project will be built in San Bernardino County in a region labeled by Congress as the California Desert Conservation Area ("CDCA").

Administrative Record:
Pre-ROD
Bates Number: ISEGS0000089
General Type: Decisions
AR Code (ST): 12-06
AR Code (Doc #): 91
Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan

| 62 | In November 2009, a Draft Environmental Impact Statement ("EIS") and Draft California Desert Conservation Area Plan Amendment was prepared. | Administrative Record: <br> Pre-ROD <br> Bates Number: ISEGS00002379-3641 <br> General Type: Decisions <br> AR Code (ST): 09-03 <br> AR Code (Doc #): 87 <br> Document Title: Final Staff Assessment and Draft Environmental Impact Statement and Draft California Desert Conservation Area Plan Amendment ISEGS Application for Certification (07-AFC-5) San Bernardino County |
| --- | --- | --- |
| 63 | In April 2010, a Supplemental Draft EIS was prepared. | Administrative Record: <br> Pre-ROD <br> Bates Number: ISEGS00001972-2270 <br> General Type: Decisions <br> AR Code (ST): 09-05 <br> AR Code (Doc #): 110 <br> Document Title: Supplemental Draft EIS for ISEGS, April 2010 |
| 64 | In July 2010, a Final EIS was prepared. | Administrative Record: <br> Pre-ROD <br> Bates Number: ISEGS0000474-941 <br> General Type: Decisions <br> AR Code (ST): 10-03 <br> AR Code (Doc #): 15 <br> Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS |

| 65 | In October 2010, the US Department of Interior Bureau of Land Management issued a Record of Decision ("ROD") for the Ivanpah Project. | Administrative Record: Pre-ROD Bates Number: ISEGS0000083-377 General Type: Decisions AR Code (ST): 12-06 AR Code (Doc #): 91 Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan |
| 66 | The ROD covers two decisions: the amendment of the CDCA Plan to include the Project as an approved power generation location and to grant four Right-Of-Way ("ROW") authorizations for the Mitigated Ivanpah 3 Alternatives. | Administrative Record: Pre-ROD Bates Number: ISEGS0000086 General Type: Decisions AR Code (ST): 12-06 AR Code (Doc #): 91 Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan |
| 67 | In October 2010, the Department of Energy adopted the Final EIS. | Administrative Record: DOE Bates Number: DOE000631-632 Document Title: Ivanpah-DOE-FEIS-Adoption-Notice |
| 68 | In April 2011, the Department of Energy issued a ROD. | Administrative Record: DOE Bates Number: DOE000622-630 Document Title: DOE-Ivanpah-ROD |

69    Plaintiffs commenced this action in    Complaint [Docket No. 1]
      January 2011.

**NEPA Purpose and Need: Section IV(C)(1)**

70    In the final EIS, the BLM states:    Administrative Record:
      BLM's purpose and need for the    Pre-ROD
      ISEGS project is to respond to the    Bates Number: ISEGS00001527
      applicant's application under Title V    General Type: Decisions
      of the FLPMA (43 U.S.C. 1761) for    AR Code (ST): 10-03
      a ROW grant to construct, operate,    AR Code (Doc #): 15
      maintain,    and    decommission    a    Document Title: CDCA Plan
      concentrated    solar    electric    Amendment/FEIS for Ivanpah SEGS
      generation plan on public land along
      with   associated   infrastructure   in
      compliance   with   FLPMA,   BLM
      regulations   and   other   applicable
      laws.***The BLM will determine
      and   disclose   the   environmental
      impacts of the ISEGS proposal and
      decide    whether    granting    the
      requested ROW is in the public
      interest.  The BLM has determined
      that the proposed solar project and
      associated ROW would require an
      amendment to the CDCA Plan.  The
      BLM   will   also   consider   the
      amendment of the CDCA Plan to
      identify the ISEGS site.

71    The alternatives considered in any detail in the Final EIS were the proposed action, two alternatives in the same general location and using the same technology, but with some differences in configuration–the Mitigated Ivanpah 3 Alternative and the Modified I-15 Alternative, and the No Action Alternative.

Administrative Record:

Pre-ROD

Bates Number: ISEGS00001548-1549

General Type: Decisions

AR Code (ST): 10-03

AR Code (Doc #): 15

Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS

72    EPA commented "the *purpose* of the proposed action is typically the specific objectives of the activity, while the *need* for the proposed action may be to eliminate a broader underlying problem or take advantage of an opportunity."

Administrative Record:

Pre-ROD

Bates Number: ISEGS00022202

General Type: DEIS/FSA

AR Code (ST): 06

AR Code (Doc #): 169

Document Title: US EPA Comments

73 | The statement of purpose and need in the Supplemental Draft EIS said that the proposed action was to "approve, approve with modifications, or disapprove ROW applications filed by Solar Partners I, LLC; Solar Partners II, LLC; Solar Partners IV, LLC; and Solar Partners VII, LLC (applicant)...to develop the Ivanpah Solar Electric Generation System (ISEGS) project." In addition, the need for the action as facilitating the development of renewable energy sources and meeting federal and state policy goals of generating renewable energy on public lands.

Administrative Record:
Pre-ROD
Bates Number: ISEGS00001993
General Type: Decisions
AR Code (ST): 09-05
AR Code (Doc #): 110
Document Title: Supplemental Draft EIS for ISEGS, April 2010

74 | Plaintiff CARE raised the issue that an adequate range of feasible alternatives was not considered and that the range of alternatives considered was unreasonable because it failed to consider a DG alternative.

Administrative Record:
Pre-ROD
Bates Number: ISEGS00024262
General Type: FEIS
AR Code (ST): 05
AR Code (Doc #): 35
Document Title: Protest to the ISEGS FEIS and associated amendment to BLM's CDCA plan (Californians for Renewable Energy, Inc.)

75 | Center for Biological Diversity raised the issue that the range of alternatives remained too narrow because of a faulty purpose and need description.

Administrative Record:
Pre-ROD
Bates Number: ISEGS00021517-21519
General Type: SDEIS
AR Code (ST): 05
AR Code (Doc #): 120
Document Title: SEGS DEIS Comments (Center for Biological Diversity)

**NEPA Programmatic EIS: Section IV(B)(2)**

| 76 | The California/Nevada Regional Conservation Desert Committee commented that there were a large number of existing applications for solar energy projects having the potential to have direct, indirect, and cumulative impacts to Bureau of Land Management California Desert Conservation Area lands and a programmatic EIS was required to comply with NEPA. | Administrative Record: Pre-ROD Bates Number: ISEGS00013583 General Type: Scoping AR Code (ST): 01 AR Code (Doc #): 1 Document Title: Re: Notice of Intent to prepare an Environmental Impact Statement/Final Staff Assessment for the Ivanpah SEGS |

| 77 | BLM prepared schedules of California fast-track projects. | Administrative Record: Pre-ROD Bates Number: ISEGS00011509 General Type: Schedules AR Code (ST): 01 AR Code (Doc #): 44 Document Title: BLM fast track schedule |
| | | Bates Number: ISEGS00013583 General Type: Schedules AR Code (ST): 03 AR Code (Doc #): 99 Document Title: BLM Fast-Tack ESA Tracking Table |

| 78 | The Center for Biological Diversity commented that the failure to consider connected, cumulative, and similar actions in the same environmental document amounts to unlawful segmentation. | Administrative Record: Pre-ROD Bates Number: ISEGS00021521 General Type: SDEIS AR Code (ST): 05 AR Code (Doc #): 120 Document Title: SEGS DEIS Comments (Center for Biological Diversity) |

| 79 | The Center for Biological Diversity provided maps comparing the Ivanpah Valley before the Ivanpah Project and proposed projects and a map with the Ivanpah Project and other proposed projects. | Administrative Record: Pre-ROD Bates Number: ISEGS00021532-33 General Type: SDEIS AR Code (ST): 05 AR Code (Doc #): 120 Document Title: SEGS DEIS Comments (Center for Biological Diversity) |
|---|---|---|
| 80 | The Final EIS acknowledges that if a number of foreseeable cumulative projects are developed, the Ivanpah Valley landscape would "quickly reach a visual quality and sensitivity condition, becoming an urbanized environment, in apparent conflict with the area's Multiple-Use Class L status under the CDCA Plan and the County of San Bernardino's scenic highway policies." | Administrative Record: Pre-ROD Bates Number: ISEGS00001513 General Type: Decisions AR Code (ST): 10-03 AR Code (Doc #): 15 Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS |

**FLPMA: Section IV(C)**

| 81 | Defendants adopted a CDCA Plan amendment to facilitate this large-scale industrial solar facility--the largest of its kind on public land--on Class L (Limited) public lands. | Administrative Record: Pre-ROD Bates Number: ISEGS0000096 General Type: Decisions AR Code (ST): 12-06 AR Code (Doc #): 91 Document Title: Record of Decision for the Ivanpah Solar Electric Generating System Project and Associated Amendment to the California Desert Conservation Area Plan |
|---|---|---|

| | | |
|---|---|---|
| 82 | Class L public lands are to be "managed to provide for generally lower-intensity, carefully controlled multiple use of resources while ensuring that sensitive values are not significantly diminished." | <u>Administrative Record:</u> Supplement Bates Number: 16 Document Title: California Desert Conservation Area Plan |
| 83 | For Class L public lands, consumptive uses are allowed "only up to the point that sensitive natural and cultural values might be degraded." | <u>Administrative Record:</u> Supplement Bates Number: 24 Document Title: California Desert Conservation Area Plan |

84   The Ivanpah project would result in direct adverse impact to existing scenic resource values as seen from several Key Observation Points in the Ivanpah Valley and Clark Mountains including: viewpoints in the Stateline Wilderness Area, viewpoints in the Mojave National Preserve, throughout the east face of Clark Mountain, middle-ground-distance viewpoints on Highway I-15, and the Primm Valley Golf Course.   "The visual impacts associated with the project would be viewed by visitors to the Mojave National Preserve and two designated wilderness areas, and a land-sailing site of regional or greater importance.   The potential effects involve the unique scenic characteristics of the local landscape as indicated by the national park and wilderness designations of portions of the project viewshed...."   Glare from the project "could alter the character of views of Clark Mountain from the valley floor, affecting the public's ability to enjoy those views, though not preventing them." The Final EIS acknowledges that if a number of foreseeable cumulative projects are developed, the Ivanpah Valley landscape would "quickly reach a visual quality and sensitivity condition, becoming an urbanized environment, in apparent conflict with the area's Multiple-Use

Administrative Record:
Pre-ROD
Bates Number: ISEGS00001511-13
General Type: Decisions
AR Code (ST): 10-03
AR Code (Doc #): 15
Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS

| | | |
|---|---|---|
| 85 | The Project's construction activities will contribute to PM10 and ozone impacts. | Administrative Record: Pre-ROD Bates Number: ISEGS00001500 General Type: Decisions AR Code (ST): 10-03 AR Code (Doc #): 15 Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS |
| 86 | The Project will have direct, adverse impacts to desert tortoise habitat. In addition to direct habitat loss, the Project will also fragment and degrade adjacent tortoise habitat. | Administrative Record: Pre-ROD Bates Number: ISEGS00001502 General Type: Decisions AR Code (ST): 10-03 AR Code (Doc #): 15 Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS |
| 87 | The Project has potential impacts to soil and water resources. Project-related changes to alluvial fan hydrology could result in impacts to adjacent land users and the Ivanpah playa. *Id.* | Administrative Record: Pre-ROD Bates Number: ISEGS00001508 General Type: Decisions AR Code (ST): 10-03 AR Code (Doc #): 15 Document Title: CDCA Plan Amendment/FEIS for Ivanpah SEGS |

| 88 | The CDCA Plan recognizes *Prominent features of the CDCA landscape, wildlife species, prehistoric and historic sites of occupation, worship, and domestic activities, and many plant and mineral resources are of traditional cultural value in the lives of the Desert's Native people. In some cases these resources have a religious value. Specific sites or regions may be important because of their role in ritual or the mythic origin of an ethnic group. These values will be considered in all CDCA land-use and management decisions.* | Administrative Record: Supplement Bates Number: 29 Document Title: California Desert Area Conservation Area Plan |

**NHPA: Section IV(D)**

| 89 | Plaintiff Phillip Smith contacted BLM to express concern over the Ivanpah solar project and other solar projects in the area. | Administrative Record: Pre-ROD Bates Number: ISEGS00010002 General Type: Mailing/Contact Lists AR Code (ST): 01 AR Code (Doc #): 15 Document Title: Tribal contact on ISEGS |

90    Phillip Smith offered the specific comment that "the Chemehuevi used to live in and use the mountains surrounding the Ivanpah Valley for hunting and collecting, that a spring was named 'Ivanpah' meaning 'good water' in Chemehuevi (not near the project area) and that he wanted to be included on future mailings," that outreach should have given BLM notice that they should be contacting Phillip Smith regarding the project.

Administrative Record:
Pre-ROD
Bates Number: ISEGS00010005
General Type: Mailing/Contact Lists
AR Code (ST): 01
AR Code (Doc #): 15
Document Title: Tribal contact on ISEGS

91     In February 2010, Plaintiff Phillip Smith attended an open house at the BLM Needle's office regarding the Ivanpah Project and identified himself as being there for the Colorado River Indian Tribe. (10010).

Administrative Record:
Pre-ROD
Bates Number: ISEGS00010010
General Type: Mailing/Contact Lists
AR Code (ST): 01
AR Code (Doc #): 13
Document Title: Open House-Proposed Ivanpah Solar Electric Generating System Project

**RFRA: Section IV(E)**

92    The CDCA Plan specifically recognizes the importance of Native American values and separates them from consideration of other cultural resources.

Administrative Record:
Supplement
Bates Number: 136
Document Title: California Desert Area Conservation Area Plan

| 93 | The Native American Element of the CDCA Plan recognizes various laws aimed at protecting traditional Native American values, including the American Indian Religious Freedom Act of 1978 and Task Force Report on P.L. 95-341, which recognized the special social and religious values which many natural and cultural resources hold for traditional Native Americans. The Native American Element further determines that "the rights guaranteed to Native people under existing legislation include access to sites, use and possession of sacred objects, and the freedom to worship through ceremonies and traditional rites." | Administrative Record: Supplement<br>Bates Number: 29<br>Document Title: California Desert Area Conservation Area Plan |

**EPAct: Section IV(G)**

| 94 | In May 2007 DOE issued a Notice of Proposed Rulemaking and Opportunity for Comment for the addition of part 609 (§§ 609.1 to 609.18) to Title 10 of the Code of Federal Regulations. The proposed regulations were intended to address loan guarantees for "Eligible Projects," defined to mean new and innovative technology that was not a commercial technology and otherwise met the requirements of Section 1703. | Administrative Record: DOE<br>Bates Number: 598-615<br>Document: 72 Fed. Reg. 27471, 27480 (May 16, 2007) |

| 95 | In October 2007, DOE published notice of its final rule for "Loan Guarantees That Employ Innovative Technologies," which would be codified at 10 C.F.R. part 609. The notice for the final rule indicated that "DOE believes that commercial use of these technologies will help sustain and promote economic growth, produce a more stable and secure energy supply and economy for the United States, and improve the environment." | Administrative Record: DOE Bates Number: 567-597 Document: 72 Fed. Reg. 60116 (Oct. 23, 2007) |
|----|----|----|
| 96 | In December 2009, DOE made changes "to the regulations for the loan guarantee program authorized by Section 1703 of Title XVII of the Energy Policy Act of 2005." | Administrative Record: DOE Bates Number: 198-214 Document:74 F.R. 63544 (December 4, 2009) |
| 97 | Federal Defendants admitted allegation that "[n]o regulations have been promulgated for loan guarantees issued under Section 1705 of the EPAct." | Federal Defendants' Answer ¶ 55 [Docket No. 98] |
| 98 | Federal Defendants admitted allegation that "Defendants did not publish a notice of proposed rule-making in the Federal Register for the intent to rely on the regulations codified in part 609 of Title 10 of the Code of Federal Regulations for the Section 1705 loan guarantees." | Federal Defendants' Answer ¶ 57 [Docket No. 98] |

1

2      Date: April 13, 2012.              Respectfully submitted,

3                                          BRIGGS LAW CORPORATION

4                                  By:    s/ Cory J. Briggs
                                          Attorneys for Plaintiffs La Cuna de Aztlan
5                                         Sacred Sites Protection Circle Advisory
                                          Committee, CAlifornians for Renewable Energy,
6                                         Alfredo Acosta Figueroa, Phillip Smith, Patricia
                                          Figueroa, Ronald Van Fleet, and Catherine
7                                         Ohrin-Greipp

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28